**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JASON R. TODD,<br><br>Plaintiff,<br><br>v.<br><br>SELECTIVE INSURANCE GROUP, INC., *et al.*,<br><br>Defendants. | Civil Action No. 25-13962 (JXN)(CF)<br><br>**OPINION** |

**NEALS**, District Judge

This opinion resolves twenty-three motions. Before the Court are: (1) motions to dismiss *pro se* Plaintiff Jason R. Todd's ("Plaintiff") complaint filed by Defendants Selective Insurance Group, Inc. ("Selective") and David Swartz ("Swartz") (collectively, "Selective Defendants") (ECF No. 87), and by Defendant The Vanguard Group ("Vanguard") (with the Selective Defendants, "Defendants") (ECF No. 91); (2) Plaintiff's motion for leave to file an amended complaint (ECF No. 161); and (3) twenty other motions Plaintiff filed (ECF Nos. 57, 66, 70, 71, 74, 75, 83, 93, 94, 95, 96, 99, 100, 115, 118, 122, 126, 135, 143, 157).

The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motions to dismiss (ECF Nos. 87, 91) are **GRANTED**; Plaintiff's motion for leave to amend (ECF No. 161) is **DENIED**; Plaintiff's remaining motions are **DENIED as moot**; and the Complaint (ECF No. 1) is **DISMISSED *with prejudice***.

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

# I. BACKGROUND

## A. Statement of Facts

Plaintiff is a disabled veteran living in Pennsylvania. (*See* Compl. at *3,[2] ECF No. 1.) Selective is an insurance company. (*Id.*) Plaintiff alleges that Swartz, an insurance agent working for Selective, called Plaintiff on December 16, 2024 and triggered a "documented suicide crisis." (*Id.* at *4.) Plaintiff asserts that the Selective Defendants "deliberately ignored" Plaintiff's trauma records, and "suppressed material events." (*Id.*) Plaintiff also claims that Selective failed to disclose its purported failure to comply with the Americans with Disabilities Act ("ADA") in quarterly or yearly securities reports. (*Id.*) Plaintiff further alleges that Vanguard, a major shareholder of Selective, "failed to act after material evidence of litigation, trauma filings, and securities risk." (*Id.*)

## B. Procedural History

### *i. The Pennsylvania Action*

Plaintiff, proceeding *pro se* and *in forma pauperis*, sued the Selective Defendants, among others, in the Middle District of Pennsylvania on March 10, 2025 ("Pennsylvania Action").[3] (*See* Selective Ex. B ("Pa. Compl.") at *96–103, ECF No. 87-2.) Plaintiff claims he was assaulted in September 2024, causing a traumatic brain injury. (*Id.* at *98.) Plaintiff alleges he submitted evidence of his injuries to the Derry Township Police Department. (*Id.*) Plaintiff asserts the police suppressed the evidence of his injuries and withheld his medical records from the prosecutor's office and the Veterans Administration. (*Id.* at *98–99.) The perpetrator of the assault pled guilty

[2] Pincites preceded by an asterisk (*) use ECF pagination.

[3] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Filings in the Pennsylvania Action are indisputably matters of public record.

to summary harassment. (*Id.* at *98.) Plaintiff argues that, had the police department not suppressed evidence of his injuries, the prosecutor would have charged the perpetrator with a felony. (*Id.*) On December 16, 2024, Plaintiff alleges that Swartz verbally harassed Plaintiff on the phone, triggering a post-traumatic stress disorder ("PTSD") crisis. (*Id.* at *100.)

The Pennsylvania Complaint asserted racketeering, mail fraud, obstruction of justice, and emotional distress claims against the Selective Defendants. (*Id.* at *101–02.) Plaintiff amended the Pennsylvania Complaint twice. (*See* Selective Ex. C ("Second Am. Pa. Compl.") at *169–73, ECF No. 87-2.) In the Second Amended Pennsylvania Complaint, Plaintiff alleged that the Selective Defendants harassed Plaintiff, causing a PTSD crisis. (*Id.* at *171.) Plaintiff asserted claims for violations of his civil rights, racketeering laws, and the ADA. (*Id.* at *171–72.) Plaintiff included a state law claim for intentional infliction of emotional distress, and further alleged that the Selective Defendants conspired to suppress evidence. (*Id.*)

The magistrate judge assigned to the Pennsylvania Action recommended the District Court dismiss the Second Amended Pennsylvania Complaint with prejudice, which the District Court adopted. *See Todd v. Derry Township*, No. 25-435, 2025 WL 2406540 (M.D. Pa. June 2, 2025), *report and recommendation adopted,* 2025 WL 1808188 (M.D. Pa. July 1, 2025). Plaintiff appealed and the Third Circuit affirmed. *See Todd v. Derry Township*, No. 25-2335, 2026 WL 540384 (3d Cir. Feb. 26, 2026).

***ii. This Action***

After the Middle District of Pennsylvania dismissed the Pennsylvania Action with prejudice, but before the Third Circuit affirmed, Plaintiff filed this lawsuit on July 30, 2025. (*See id.*) The complaint includes claims for discrimination under the ADA, 42 U.S.C. § 12203, against all Defendants ("Count I"); civil rights violations under 42 U.S.C. § 1983 against the Selective

Defendants ("Count II"); securities fraud, under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, against Vanguard and Selective ("Count III"); destruction of evidence under 18 U.S.C. § 1519 ("Count IV"); negligent infliction of emotional distress against Swartz ("Count V"); and constructive agency breach against Selective ("Count VI"). (*Id.* at *5.)

Plaintiff proceeded to file "over 120 motions, notices, and other submissions on the docket." (*See* May 20, 2026 Order, ECF No. 175.) Amid the flurry of docket activity, the Selective Defendants and Vanguard separately moved to dismiss under Rule 12(b)(6). (*See* Selective Moving Br., ECF No. 87-1; Vanguard Moving Br., ECF No. 92.) The Selective Defendants argue *res judicata* bars Plaintiff's claims because this lawsuit is identical to the Pennsylvania Action. (*See* Selective Moving Br. at 12–15.) In the alternative, the Selective Defendants argue Plaintiff's claims fail on the merits. (*Id.* at 15–23.) Vanguard argues, as a mere shareholder of Selective, it cannot be held liable for Selective's conduct. (*See* Vanguard Moving Br.) Plaintiff opposed both motions and moved for sanctions against Defendants. (*See* ECF Nos. 93, 94.) Defendants replied (*see* Selective Reply, ECF No. 110; Vanguard Reply, ECF No. 112).

On May 15, 2026, Plaintiff sought leave to file an amended complaint. (*See* Mot. for Leave, ECF No. 161.) The Court then directed Plaintiff to submit a proposed amended complaint and a redlined copy (*see* May 20, 2026 Order), which he later supplied (*see* Proposed Am. Compl., ECF No. 177; Redline Compl., ECF No. 180). The proposed amended complaint did not name Vanguard as a defendant. (*See* Proposed Am. Compl.) The Selective Defendants and Vanguard opposed the motion. (*See* Selective Opp'n, ECF No. 178; Vanguard Opp'n, ECF No. 179.) Plaintiff confirmed he requested to dismiss Vanguard from the action. (*See* ECF No. 181-2.)

## II. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

While courts give "greater leeway" to *pro se* litigants, they "still must allege sufficient facts in their complaints to support a claim," and "abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013).

## III. DISCUSSION

### A. *Res Judicata* Applies to Plaintiff's Claims Against Selective Defendants

The doctrine of *res judicata* bars suit when there is "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Davis*, 824 F.3d at 341 (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). "The purpose of *res judicata* is to 'relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.'" *Id.* at 341–42 (quoting *Marmon Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 726 F.3d 387, 394 (3d Cir. 2013)). Accordingly, *res judicata* "bars not only claims that were brought in a previous action, but also claims that could have been brought." *Id.* at 342 (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)).

Here, the Pennsylvania Action involved Plaintiff and the Selective Defendants. (*See* Pa. Compl.; Second Am. Pa. Compl.) And the Second Amended Pennsylvania Complaint was dismissed with prejudice. *See Todd*, 2025 WL 2406540, at *3. "A dismissal with prejudice 'operates as an adjudication on the merits,' so it ordinarily precludes future claims." *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020).

The Court also concludes that this suit is based on the same causes of action as the earlier Pennsylvania Action. In the Pennsylvania Action, Plaintiff alleged the Selective Defendants (1) violated the ADA and his civil rights by triggering a PTSD episode; (2) suppressed records of Plaintiff's trauma; and (3) caused emotional distress. (*See* Second Am. Pa. Compl. at *170–72.) In this case, Plaintiff alleges the Selective Defendants (1) violated the ADA and his civil rights by triggering a PTSD episode; (2) failed to disclose Selective's ADA non-compliance to investors; (3) suppressed evidence; and (4) inflicted emotional distress. (*See* Compl. at *4–5.)

Courts take "a broad view of what constitutes the same cause of action." *Davis*, 824 F.3d at 342 (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014)). The inquiry turns "on the essential similarity of the underlying events giving rise to the various legal claims." *Id.* (quoting *Blunt*, 767 F.3d at 277). "Factors relevant to this determination include (1) whether the acts complained of were the same; (2) whether the material facts alleged in each suit were the same; and (3) whether the witnesses and documentation required to prove such allegations were the same." *Marmon Coal Co.*, 726 F.3d at 394–95.

Here, the events underlying both lawsuits are identical: Plaintiff alleges that Swartz's phone call triggered a PTSD crisis, Selective failed to comply with the ADA, and both Selective Defendants suppressed evidence. (*Compare* Second Pa. Am. Compl. at *170–72 *with* Compl. at *4–6.) The material facts are also the same. Both cases arise from Swartz's phone call, Plaintiff's past trauma and subsequent hospitalization, and Selective's suppression of Plaintiff's records. The evidence required to prove Plaintiff's claims is the same in both actions. In either case, the Court would need to examine records of Plaintiff's trauma, Swartz's phone call, Plaintiff's hospitalization, and Selective's conduct. The Court, accordingly, finds this lawsuit involves the same claims as the Pennsylvania Action.[4]

Because Plaintiff's claims against the Selective Defendants satisfy all three elements of *res judicata*, the Court **grants** the Selective Defendants' motion to dismiss.

---

[4] The fact that Plaintiff newly brought a securities fraud claim in this case does not compel a different conclusion. *Res judicata* bars any claims Plaintiff could have brought in a prior action. *Davis*, 824 F.3d at 341.

Plaintiff could have brought the securities fraud claim in the Pennsylvania Action. Plaintiff alleges Selective did not disclose to investors its non-compliance with the ADA or any attendant risk of litigation. (*See* Compl. at *5.) That claim, however, arises from Selective's alleged non-compliance with the ADA, i.e., that the Selective Defendants triggered Plaintiff's PTSD crisis and suppressed his trauma records. Those acts were central to the Pennsylvania Action. The underlying facts of Swartz's call and Selective's conduct are the same. And the evidence required to prove Plaintiff's claim would be identical. Accordingly, the Court concludes *res judicata* bars Plaintiff's securities fraud claim.

### B. Vanguard is Not Liable for Selective's Conduct

Plaintiff alleges that, as a Selective shareholder, Vanguard is liable for Selective's ADA and securities violations.

Under New Jersey law, "a corporation is a separate entity from its shareholders." *State, Dep't of Env't Prot. v. Ventron Corp.*, 94 N.J. 473, 500 (1983). The primary purpose "for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *Id.* Absent "fraud or injustice," courts will not pierce the corporate veil to impose a corporation's liability on the shareholders. *Lyon v. Barrett*, 89 N.J. 294, 300 (1982). Courts, however, will disregard the corporate form where it is "being used to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law." *Ventron Corp.*, 94 N.J. at 500. "[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity." *Tung v. Briant Park Homes, Inc.*, 287 N.J. Super. 232, 240 (App. Div. 1996).

To pierce the corporate veil, the plaintiff must show (1) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist"; and (2) the circumstances "indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019) (citation omitted). To show a unity of interest between the corporation and its shareholder, courts consider factors such as:

> [1] gross undercapitalization . . . ; [2] the failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Id.* (alterations in original) (quoting *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988)). As for the second element, the question is not whether a shareholder committed fraud or injustice, but rather, whether a shareholder *used* the corporation's form to do so. *Id.*

Plaintiff, as the party seeking to hold Vanguard liable for Selective's conduct, has made neither showing. First, Plaintiff does not adequately allege that Vanguard and Selective have any unity of interest or ownership, such that Vanguard *is* Selective. Second, Plaintiff does not show that Vanguard used Selective's corporate form as a vehicle to commit fraud or wrongdoing. The Court, accordingly, lacks any factual basis to hold Vanguard liable for Selective's alleged ADA or securities violations.

Therefore, the Court **grants** Vanguard's motion to dismiss.

### C. Dismissal is With Prejudice

#### *i. Plaintiff's Motion is Procedurally Deficient*

As an initial matter, the Court notes that Plaintiff's motion for leave to amend did not comply with Local Civil Rule 15.1 or this Court's orders. Local Civil Rule 15.1(a) requires the moving party to include a copy of the proposed amended pleading and "a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading which it proposes to amend, by bracketing or striking through materials to be deleted and underlining materials to be added."

Plaintiff's motion for leave to amend did not include a copy of the proposed amended pleading or a redline. (*See* Mot. for Leave to Amend.) On May 20, 2026, the Court directed Plaintiff, within two weeks, to submit a proposed amended pleading entitled "Proposed Amended Complaint" and a redlined copy entitled "Redlined Copy of the Proposed Amended Complaint." (*See* May 20, 2026 Order.) Plaintiff submitted a Proposed Amended Complaint (*See* Proposed Am.

Compl. ("PAC"), ECF No. 177-1), and a "redlined version" that did not bracket or strike through materials to be deleted or underline materials to be added (*see* First Redline, ECF No. 177-2). The Court directed the Clerk not to accept Plaintiff's purported redline and ordered Plaintiff to file a compliant redlined copy of the Proposed Amended Complaint. (*See* May 22, 2026 Order, ECF No. 176.)

Plaintiff submitted a "Proposed Second Redlined Copy of the Proposed Amended Complaint" ("Second Redline") on May 27, 2026. (*See* Second Redline, ECF No. 180-1.) The Second Redline, however, does not correspond to the Proposed Amended Complaint. (*Compare* PAC, *with* Second Redline.) The Second Redline adds two defendants not named in the Proposed Amended Complaint: the Pennsylvania Capitol Police ("Capitol Police") and an officer ("Officer").[5] (*See* Second Redline at *3–4.) And the Second Redline adds new factual allegations not pled in the Proposed Amended Complaint. (*Compare* PAC, *with* Second Redline.)

Plaintiff's failure to comply with the Local Rules and the Court's orders makes "determining the sufficiency of [Plaintiff's] amended pleading unnecessarily and impermissibly burdensome." *Cresci v. City of Bayonne*, No. 23-1342, 2024 WL 94099, at *2 (3d Cir. Jan. 9, 2024). For instance, because the Second Redline does not highlight the Proposed Amended Complaint's changes, it is hard to discern what changes the Proposed Amended Complaint makes. And, mindful of the fact that Plaintiff is *pro se*, it is unclear whether Plaintiff intended for the Second Redline to serve as his amended pleading.

Either way, Plaintiff has failed on three occasions to comply with the Local Rules or this Court's orders. The Court sees no indication Plaintiff would proceed differently if granted another chance to file a redlined copy of the Proposed Amended Complaint. *See Cresci*, 2024 WL 94099,

---

[5] Ethan E. Stump.

at *2 (affirming denial of leave to amend where plaintiff would not have "proceeded any differently had he been given additional opportunities to amend."); *Mullin v. Balicki*, 875 F.3d 140, 158 (3d Cir. 2017) (noting that, in denying leave to amend, courts may consider "whether future management of the case would encounter similar difficulties."). While Plaintiff is a *pro se* litigant, he must still comply with the Local Rules. *Mala*, 704 F.3d at 244–45. Because Plaintiff failed to do so, despite two Court orders instructing Plaintiff on how to comply with Local Rule 15.1, the Court **denies** Plaintiff's motion for leave to amend.

***ii. The Proposed Amended Complaint is Futile***

Even if Plaintiff's motion was not procedurally defective, amendment is futile. Rule 15(a) requires the Court to "freely give leave when justice so requires." A district court "may deny leave to amend a complaint where it is apparent from the record that "(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). "In assessing futility, the Court applies the Rule 12(b)(6) standard—accepting all well-pleaded allegations as true and viewing them in the light most favorable to the movant." *Garrett v. Subaru of Am., Inc.*, 822 F. Supp. 3d 474, 479 (D.N.J. 2026). Granting or denying leave to amend is committed to the Court's discretion. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

The Proposed Amended Complaint is futile because it fails to state claims upon which relief may be granted. (*See* Proposed Am. Compl. ("PAC"), ECF No. 177.) The Proposed

Amended Complaint names as defendants: Selective; the Pennsylvania Human Rights Commission ("PHRC"); the Derry Township Police Department and a detective[6] ("Detective"); the Dauphin County District Attorney's Office ("District Attorney's Office"); and the Dauphin County District Attorney[7] ("Prosecutor") (collectively, "Proposed Defendants"). (*Id.* at *1.) The Proposed Amended Complaint advances no claims against Vanguard.

**a. Res Judicata Bars Claims Against Selective**

As an initial note, the claims against Selective remain barred by *res judicata*. As before, Plaintiff and Selective were both parties to the Pennsylvania Action, which resulted in a final judgment on the merits. As before, the prior and current claims against Selective are identical. In both, Plaintiff alleges Selective violated his constitutional rights based on Swartz's phone call and Selective's alleged suppression of evidence. (*See* PAC.) For the same reasons articulated above, *res judicata* precludes the Proposed Amended Complaint's claims against Selective.

**b. The Proposed Amended Complaint is a Group Pleading**

The remainder of the Proposed Amended Complaint fails to state a claim. Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (citation omitted). A complaint violates Rule 8(a) if it "indiscriminately attributes wrongdoing to a group of defendants, leaving them to guess as to who allegedly did what." *Parrish v. Hudson Sch.*, No. 25-17986, 2026 WL 1328364, at *6 (D.N.J. May 13, 2026) (cleaned up) (quoting *Coffey v. Sussex Cnty. Cmty. Coll.*, No. 25-1264, 2026 WL 265547, at *5 (D.N.J. Feb. 2, 2026)). Such a pleading "does not place Defendants 'on notice of the claims against each of them.'" *Id.* (quoting *Coffey*, 2026 WL 265547, at *5). But not every pleading

[6] Stephanie Stump.
[7] Fran Chardo.

"that groups two defendants together constitutes an impermissible group pleading." *Id.* (quoting *Kong v. Johnson & Johnson*, No. 23-3091, 2024 WL 1640996, at *5 (D.N.J. Apr. 15, 2024). The question is whether the complaint is impermissibly vague. *Id.* A complaint is impermissibly vague if it leaves Defendants and the Court to "guess who did what to whom when." *Id.* (quoting *Kong*, 2024 WL 1640996, at *5). A complaint is not impermissibly vague if, "when read in the context of other specific allegations, it is sufficient to put a defendant on notice that the grouped allegation is brought, at least in part, against the specific defendant." *Id.* (quoting *Kong*, 2024 WL 1640996, at *5).

The Proposed Amended Complaint is impermissibly vague. It alleges the Proposed Defendants collectively retaliated against Plaintiff's constitutionally protected speech, denied Plaintiff access to the courts, and deprived Plaintiff of due process without identifying who did what. (*See* PAC at *6.) Correspondingly, the Proposed Amended Complaint fails to provide the Proposed Defendants with notice of the claims against them. Because amendment is futile if a proposed amended pleading fails to state a claim, motion for leave to amend is denied as to the Proposed Amended Complaint. *Jones v. Ryan*, No. 23-4557, 2026 WL 1031856, at *6 (D.N.J. Apr. 16, 2026) (denying leave to amend where proposed amended pleading was group pleading).

***iii. The Second Redline is Futile***

As discussed above, the Second Redline materially differs from the Proposed Amended Complaint. The Second Redline states new and more detailed claims against the Proposed Defendants, as well as the Capitol Police and an Officer. Nevertheless, the Court construes the Second Redline as though it is a proposed amended pleading.

**a. Res Judicata Bars the Claims Against Derry and Selective**

*Res judicata* bars the Second Redline's claims against Selective. Plaintiff again states that Selective harassed Plaintiff in a phone call and violated the ADA. (*See* Second Redline at *16.) The parties are the same as in the Pennsylvania Action, which ended in a final judgment on the merits, and the claims against Selective are identical. *Res judicata* applies with equal force to the Complaint, the Proposed Amended Complaint, and the Second Redline.

Plaintiff further alleges that the Derry Township Police Department retaliated against Plaintiff for criticizing the police department. (*See* Second Redline at *8.) *Res judicata* bars that claim, too. To start, the parties are the same. In the Pennsylvania Action, Plaintiff sued Derry Township ("Derry"). Though Plaintiff sues Derry's police department in this action, police departments "are not separate entities from the municipalities." *Castro v. New Jersey*, 521 F. Supp. 3d 509, 516 n.4 (D.N.J. 2021) (citation omitted). And, as before, the Pennsylvania Action ended in a final judgment on the merits. *Todd*, 2025 WL 1808188, at *3. Moreover, the claims are identical. In both actions, Plaintiff alleged that Derry retaliated against Plaintiff and deprived Plaintiff of due process for criticizing the police department, including by sending a cease-and-desist. (*Compare* Second Am. Pa. Compl. at *171, *with* Second Redline at *8.) The underlying facts about Derry's allegedly retaliatory acts are the same. Accordingly, Plaintiff could have raised his claims against Derry in the Pennsylvania Action, and *res judicata* bars Plaintiff from bringing them here. Amendment, therefore, is futile as to Selective and Derry.

**b. The PHRC, Capitol Police, District Attorney's Office, and Prosecutor Are Immune from Suit**

The Eleventh Amendment renders states immune "from liability for damages in a suit brought in federal court by one of its own citizens." *Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 201 (3d Cir. 2014) (quoting *Dellmuth v. Muth*, 491 U.S. 223, 229

n.2 (1989)). "This immunity extends to state agencies." *Id.* (citing *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001)).

Here, the Eleventh Amendment precludes liability against PHRC, the Capitol Police, and the District Attorney's Office. The PHRC "is an administrative commission within the executive department of the Commonwealth of Pennsylvania and, as such, it shares in the Commonwealth's Eleventh Amendment immunity." *Id.* The Capitol Police is an arm of the state entitled to Eleventh Amendment immunity. *See Sciarra v. State Capitol Police Dep't*, No. 24-666, 2024 WL 6473231, at *2 (M.D. Pa. May 13, 2024) ("The plaintiff's claims against the Pennsylvania Capitol Police are barred by the Eleventh Amendment, absent the state's consent to suit or other waiver of Eleventh Amendment immunity.), *report and recommendation adopted*, No. 24-666, 2024 WL 6473228 (M.D. Pa. June 11, 2024).

The District Attorney's Office is also an arm of the state. To be sure, "Pennsylvania's Constitution *expressly* defines District Attorneys as county rather than state officers." *Carter v. City of Philadelphia*, 181 F.3d 339, 349 (3d Cir. 1999) (citing Pa. Const., art. IX, § 4). But "district attorneys act on behalf of and in the name of the Commonwealth in investigating and prosecuting crimes within their district." *Id.* at 350. Accordingly, for the purposes of Eleventh Amendment immunity, "county or municipal law enforcement officials may be State officials when they prosecute crimes or otherwise carry out policies established by the State, but serve as local policy makers when they manage or administer their own offices." *Id.* at 352. Here, Plaintiff's allegations about the District Attorney's Office relate exclusively to the Prosector's decision to charge Plaintiff's assailant with summary harassment, not a felony. (*See generally* Second Redline.) Because Plaintiff complains of "decisions about whether and how to prosecute violations of state

law," the Eleventh Amendment precludes liability against the District Attorney's Office. *Carter*, 181 F.3d at 353.

The Prosecutor is also immune from suit. Prosecutors are "absolutely immune from liability under § 1983 for engaging in conduct that serves a quasi-judicial function." *Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024). Quasi-judicial conduct is "'intimately associated with the judicial phase of the criminal process' or an analogous judicial proceeding. *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Courts employ a two-step test to determine if absolute prosecutorial immunity applies. First, courts "ascertain just what conduct forms the basis for the plaintiff's cause of action." *Id.* at 625 (citation omitted). Second, courts "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Id.* (citation omitted). A prosecutor is immune if "the conduct triggering absolute immunity clearly appears on the face of the complaint." *Id.* (citation omitted). Here, the Second Redline's allegations against the Prosecutor revolve around her failure to charge Plaintiff's assailant with a felony. That is quintessentially prosecutorial function for which the Prosecutor is immune from suit.

Because the PHRC, Capitol Police, District Attorney's Office, and Prosecutor are immune from suit, leave to amend is denied as to those parties. *Garrett*, 822 F. Supp. 3d at 479.

**c. The Proposed Claims Against the Detective and Officer are Devoid of Factual Content**

Having concluded that amendment is futile as to Selective, Derry, the PHRC, the Capitol Police, the District Attorney's Office, and the Prosecutor, the Court turns to the remaining claims against the Detective and Officer. Those claims suffer from an utter failure of proof.

*1. First Amendment Retaliation*

To state a First Amendment retaliation claim, Plaintiff must show (1) he "engaged in conduct protected by a right in the Constitution"; (2) the defendant "engaged in retaliatory action

sufficient to deter a person of ordinary firmness from exercising [his] constitutional rights"; and (3) a "causal link" existed between the protected activity and the retaliatory action. *Falcone v. Dickstein*, 92 F.4th 193, 205 (3d Cir. 2024) (quoting *Palardy v. Township of Millburn*, 906 F.3d 76, 80–81 (3d Cir. 2018)).

Plaintiff alleges the Officer filled out a probable cause affidavit "alleging terroristic threats and harassment against Plaintiff based upon Plaintiff's email correspondence with PHRC." (Second Redline at *10–11.) But, according to Plaintiff, "those communications arose from ADA-related submissions, trauma documentation, PHRC complaint activity, federal judicial filings, and protected efforts to obtain governmental and judicial review." (*Id.* at *11.) Thus, Plaintiff asserts the Officer retaliated against Plaintiff exercising his First Amendment rights. But the Second Redline has "no allegations from which [the Court] can infer causation." *Todd*, 2025 WL 2406540, at *5. Indeed, the Second Redline does not describe what Plaintiff said, when he said it, if it related to constitutionally protected conduct, and the nature of the Officer's probable cause affidavit. *Id.* At most, Plaintiff asserts his unspecified conduct *was* constitutionally protected and that the Officer's probable cause affidavit was retaliatory. But this kind of "unadorned, the-defendant-unlawfully-harmed-me accusation" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citation omitted).

As for the Detective, Plaintiff alleges she filed a criminal harassment complaint against Plaintiff after Plaintiff requested the judge presiding over a PHRC matter to recuse themselves. (*Id.* at *11.) Plaintiff does not identify what he said, when he said it, or what the criminal harassment complaint contained. Without more, the Court cannot determine whether Plaintiff's conduct was constitutionally protected, or that Plaintiff's conduct caused the Detective to file a criminal harassment complaint.

*2. Denial of Access to the Courts*

Denial-of-access-to-courts claims come in two flavors. *Christopher v. Harbury*, 536 U.S. 403, 412 (2002). The first "are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* at 413. The essence of this kind of claim "is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs." *Id.* The goal "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.*

"The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Id.* at 413–14. This kind of claim looks "backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.* at 414. "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.*

The Second Redline does not identify any official action the Detective or Officer took causing Plaintiff to lose access to the Courts. Accordingly, the Second Redline fails to adduce any proof necessary to state a denial-of-access claim.

*3. Due Process*

Plaintiff alleges he was deprived of procedural due process. To state a procedural due process claim, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *AstraZeneca Pharm. LP v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 116, 125 (3d Cir. 2025) (quoting *Hill v.*

*Borough of Kutztown*, 455 F.3d 225, 233–34 (3d Cir. 2006)). Put differently, courts "first figure out 'the contours of the substantive right' that the government is depriving someone of." *Horton v. Rangos*, 136 F.4th 470, 474 (3d Cir. 2025) (quoting *Washington v. Harper*, 494 U.S. 210, 219–21 (1990)). "If the Constitution covers that right, [courts] then gauge 'what procedural protections are necessary to protect' it." *Id.* (quoting *Harper*, 494 U.S. at 220).

Plaintiff neither identifies the right he was allegedly deprived of, nor the purportedly inadequate procedures available to him. Nor does Plaintiff allege the Officer or Detective's personal involvement in the purported deprivation. *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (requiring a § 1983 plaintiff to "aver facts to show the defendants' personal involvement in the alleged misconduct."). At most, Plaintiff asserts, in conclusory fashion, that he suffered a "deprivation of procedural fairness, meaningful review, and constitutional protections guaranteed under the Fourteenth Amendment." (Second Redline at *19.) But a complaint does not state a claim "if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (cleaned up) (quoting *Twombly*, 550 U.S. at 557). Plaintiff's naked assertion that he was deprived of procedural due process lacks any factual assertions. Accordingly, Plaintiff fails to state a due process claim.

The Court may deny leave to amend "where it is apparent from the record" that the amendment would be futile. *Astrazeneca Pharm.*, 769 F.3d at 849. Amendment is futile if the proposed amendment fails to state a claim under Rule 12(b)(6). *In re Burlington Coat Factory*, 114 F.3d at 1434; *Garrett*, 822 F. Supp. 3d at 479. It is apparent from the record that the Proposed Amended Complaint and Second Redline fail to state claims and are futile.

Therefore, dismissal is with prejudice. And, because the Court dismisses the Complaint with prejudice, Plaintiff's remaining miscellaneous motions are denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF Nos. 87, 91) are **GRANTED**; Plaintiff's motion for leave to amend (ECF No. 161) is **DENIED**; Plaintiff's remaining motions (ECF Nos. 57, 66, 70, 71, 74, 75, 83, 93, 94, 95, 96, 99, 100, 115, 118, 122, 126, 135, 143, 157) are **DENIED as moot**; and the Complaint (ECF No. 1) is **DISMISSED *with prejudice***. An appropriate Order accompanies this Opinion.

**DATED: 7/7/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**